# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TONY O. BOMAR | ) |
| | ) |
| Plaintiff, | ) Case No. 15-cv-10842 |
| | ) |
| v. | ) Judge Sharon Johnson Coleman |
| | ) |
| PACIFIC UNION FINANCIAL, LLC | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Tony O. Bomar, brought this action against the defendant, Pacific Union Financial, LLC (Pacific Union) alleging that Pacific Union violated the Real Estate Settlement Procedures Act (Count I) and the Illinois Consumer Fraud and Deceptive Business Practices Act (Count II) and that it committed the tort of intentional infliction of emotional distress (Count III). Pacific Union has filed a motion for judgment on the pleadings [32]. For the reasons set forth below, that motion is granted in part and denied in part.

**Background**

The following facts are taken from the complaint and are accepted as true for the purpose of ruling on the present motion. Bomar and his then-wife, Gena, co-owned a home together ("the property"). The mortgage on the property was serviced by Pacific Union. In 2014, Bomar divorced Gena, and a judgment of dissolution of marriage was entered granting each party half of the property (which at the time was valued at $280,000 with a mortgage balance of $283,000).

On March 23, 2015, Bomar sought a loan modification from Pacific Union. Pacific Union replied, informing Bomar that the request could only be approved if he provided a divorce decree showing that he had been awarded sole possession of the property or if Gena, his co-borrower, also participated in the request and provided her financial information. Bomar contacted Gena but she

1

refused to cooperate, and Pacific Union subsequently denied the loan modification because the requested documents were not timely provided. Later, Gena executed a quit claim deed at Bomar's request deeding her share of the house to Bomar. On August 10, 2015, Bomar again applied for a loan modification based on the quitclaim deed. On September 9, 2015, Pacific Union Financial denied Bomar's request for a loan modification because the execution of the quit-claim deed conflicted with the divorce decree, which provided that both borrowers would retain title. Bomar appealed that denial on September 16, 2015. Bomar received no response to his appeal. Additionally, adding insult to injury, on September 4, 2015 Pacific Union informed Bomar that in March 2016 his unmodified mortgage payment would increase by $209.00.

**Legal Standard**

A Rule 12(c) motion for judgment on the pleadings is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). Thus, the Court considers whether the pleadings contain facts that allow the reasonable inference that the non-moving party could prevail in the action. *Id.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In ruling on a 12(c) motion, the Court considers the pleadings and any written instruments attached to those pleadings, while accepting as true all well-pleaded allegations in the non-moving party's pleading and drawing all inferences in favor of the non-movant. *See Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007); *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

**Discussion**

Count I alleges that Pacific Union violated the Real Estate Settlement Procedures Act (RESPA). That act provides, in pertinent part, that when a borrower appeals a loan servicer's denial of a loss mitigation application the loan servicer must "provide a notice to the borrower stating the servicer's determination of whether the servicer will offer the borrower a loss mitigation option

based on the appeal" within 30 days of the borrower's appeal. 12 C.F.R. § 1024.41(h). A borrower's failure to comply with section 1024.41 is actionable under 12 U.S.C. § 2605(f), which provides a general cause of action for violations of the Real Estate Settlement Procedures Act (RESPA).

Here, Pacific Union alleges that it sent Bomar a timely response to his appeal. Pacific Union has also attached a dated copy of its response to Bomar's appeal to its answer. Accordingly, Pacific Union contends that it has provided notice to the borrower in accordance with the regulation's requirements. Pacific Union, however, has provided no evidence establishing whether the attached letter was actually mailed or whether Bomar received it. Moreover, Pacific Union has provided this Court with no legal basis to conclude that mailing the letter was sufficient to "provide notice" under the statute. Accordingly, because this Court must take Bomar's allegations as true at this stage of the proceedings, this Court cannot grant judgment on the pleadings on Count I.

Count II alleges that Pacific Union violated the Illinois Consumer Fraud and Deceptive Business Practices Act by engaging in unfair acts and practices with regards to Bomar's request for a loan modification. In order to determine whether a defendant's conduct is unfair under ICFA, courts must consider whether (1) the conduct violates public policy; (2) is so oppressive that the consumer has little choice but to submit; or (3) causes consumers substantial injury. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010) (*citing Robinson v. Toyota Motor Credit Corp.,* 775 N.E.2d 951, 961, 201 Ill.2d 403 (2002)). All three criteria do not need to be satisfied to support a finding of unfairness; a practice "may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson,* 775 N.E.2d at 961.

Bomar alleges that Pacific Union acted in an unfair manner by requiring Gena's full participation and refusing to modify the mortgage once Gena executed a quit-claim deed. As evidence of this unfairness, Bomar asserts that FHA-HAMP guidelines allow an occupying co-borrower to be considered for loss mitigation so long as the non-occupying co-borrower has

3

relinquished his or her right in the property via a quitclaim deed. Here, however, Pacific Union viably contends that Bomar's argument is based on the guidelines for the HAMP program and not the FHA-HAMP program and that, in any event, the guidelines that Bomar relies on are permissive in nature. Moreover, Bomar's allegations that Pacific Union acted contrary to "the public policy of Illinois" is wholly conclusory in nature. Pacific Union, however, has not addressed the remaining prongs of the ICFA fairness analysis. *See Siegel*, 612 F.3d at 935. Because all three criteria do not need to be satisfied in order to support a finding of unfairness, Pacific Union has therefore failed to establish that it is entitled to judgment on the pleadings on Bomar's ICFA claim.

Count III of Bomar's complaint alleges that Pacific Union intentionally inflicted emotional distress on Bomar when it refused to accept the quitclaim deed and modify his mortgage without Gena's participation. In order to state a claim for intentional infliction of emotional distress, a plaintiff must show that (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended that his conduct should inflict severe emotional distress or knew that there was a high probability that it would do so; and (3) the defendant's conduct in fact caused severe emotional distress. *Cook v. Winfrey*, 141 F.3d 322, 330 (7th Cir. 1998).

> Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities. Liability only attaches in circumstances where the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. The distress inflicted must be so severe that no reasonable person could be expected to endure it.

*Graham v. Commonwealth Edison Co.,* 742 N.E.2d 858, 866, 318 Ill.App.3d 736 (2000) (internal quotations and citations omitted).

Bomar contends that not reviewing his application for a loan modification, in light of the quitclaim deed, constituted extreme and outrageous conduct because it caused Bomar to fear that he would lose his home. Bomar further appears to contend that Pacific Union engaged in further extreme and outrageous conduct when it increased his mortgage payment by $209.00. To be sure,

4

this Court has no doubt that Bomar was distressed when his loan modification was denied and when his mortgage payment increased. To the contrary, it is an unfortunate fact that the distress of home foreclosure is experienced by reasonable people on a regular basis. *See Hardaway v. CIT Group / Consumer Finance Inc.*, 836 F. Supp. 2d 677, 686 (N.D. Ill. 2011) (Bucklo, J.) (dismissing an intentional infliction of emotional distress claim premised on a mortgage servicer's enforcement of, and refusal to modify, the terms of the plaintiff's debt as "meritless"); *Pendolino v. BAC Home Loans Servicing, LP*, No. 10 C 5916, 2011 WL 3022265, at *5 (N.D. Ill. July 22, 2011) (Pallmeyer, J.) (holding that the plaintiff failed to state an IIED claim where he alleged that the defendant foreclosed or attempted to foreclose on his home after he failed to make monthly loan payments). And Bomar has not alleged facts to make this case anything but a routine mortgage foreclosure. *Cf. Flippin v. Aurora Bank, FSB*, No. 12 C 1996, 2012 WL 3260449, at *1–2 (N.D. Ill. Aug. 8, 2012) (Guzman, J.) (finding the plaintiff's allegations that the defendants "twice locked her out of her house, turned off the water and water heater, took her jewelry, electronics and other personal property and refused her repeated requests to remedy the situation, though they knew she was living in the house and had not obtained an order of possession" were sufficient to state a viable IIED claim). Accordingly, Bomar has not stated a claim for intentional infliction of emotional distress.

**Conclusion**

For the foregoing reasons, Pacific Union's motion for judgment on the pleadings [32] is granted with respect to Count III and denied with respect to Counts I and II.

SO ORDERED.

SHARON JOHNSON COLEMAN
United States District Court Judge

DATED: August 10, 2016