# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TONY O. BOMAR, | ) |
| Plaintiff, | ) Case No. 15-cv-10842 |
| v. | ) Judge Sharon Johnson Coleman |
| PACIFIC UNION FINANCIAL, LLC, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Tony Bomar, the plaintiff, brought this action against defendant Pacific Union Financial, LLC ("Pacific Union"). Pacific Union has now moved for summary judgment on Bomar's remaining claims. For the following reasons, Pacific Union's motion for summary judgment [52] is granted.

**Background**

As an initial matter, this Court notes that although Bomar challenges many of Pacific Union's statements of undisputed material fact, Bomar has not supported any of these denials with specific references to the record as is required by Local Rule 56.1(b)(3)(B). Those responses are accordingly disregarded and the factual allegations to which they are directed are deemed to be admitted. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Pacific Union is a mortgage lender providing mortgage origination and loan servicing. On May 24, 2014, Tony and Gena Bomar ("Gena") jointly executed a FHA Loan that was secured by a mortgage on their home. Bomar and Gena divorced in 2014. The divorce decree that resulted awarded each party half of the home and instructed the parties to execute a Quit Claim Deed

1

transferring title to both parties as tenants in common. On March 23, 2015, Bomar submitted a "Request for Mortgage Assistance Form" to Pacific Union. Bomar attached the divorce decree to that application, but failed to provide any financial information for Gena, which was required because she was a co-borrower on the loan. On March 28, 2015, Bomar provided Pacific Union with a Quit Claim Deed dated June 14, 2014 in which Gena transferred sole possession of the home to him, contrary to the terms of the divorce decree. On April 13, 2015, Pacific Union informed Bomar that he would need to provide Gena's financial information or submit an amended divorce decree showing that he was awarded sole possession of the property. Pacific Union subsequently sent a letter restating that request. Bomar's application was denied when he failed to submit the requested information.

On August 10, 2015, Freelance Paralegal Services, Inc. submitted a second "Request for Mortgage Assistance Form" on Bomar's behalf. That submission contained the divorce decree and a June 18, 2015 Quit Claim Deed from Gena transferring ownership of the home to Bomar. On September 9, 2015, Pacific Union informed Bomar that his second Loss Mitigation Application was denied because ownership of the property had not been executed in accordance with the divorce decree. Pacific Union subsequently received correspondence from Bomar through the Consumer Financial Protection Bureau (CFPB) complaint portal complaining about the denial of his second loss mitigation application. Pacific Union treated this submission both as a CFPB complaint and as an appeal of the denial of Bomar's second Loss Mitigation Application. The substance of Bomar's complaint was that he had been denied mortgage assistance because he did not have his ex-wife's cooperation and because the Quit Claim deed did not vest ownership of the property in compliance with the divorce decree. Bomar's appeal was reviewed, and was denied based on Pacific Union's determination that it had acted properly under the relevant FHA-HAMP and HUD guidelines. Bomar was sent a written response to his appeal, which was uploaded to the CFPB web portal. On

September 30, 2015, Pacific Union received a letter from Bomar appealing the denial of his Second Loss Mitigation Application. A Pacific Union representative called Bomar and explained that Pacific Union could not provide a modification without Gena's cooperation or consent because she was still financially responsible for the loan and had been awarded partial ownership of the home pursuant to the divorce decree. Bomar was again informed that his loan modification request would be reconsidered if he submitted Gena's financial information or an amended divorce decree awarding him sole ownership of the home. Bomar was additionally informed of options that would not require Gena's involvement, such as assumption of the loan and refinancing. Bomar's last mortgage payment occurred in November 2, 2015, and Bomar was not delinquent at the time his Second Loss Mitigation Application was denied, although Bomar subsequently defaulted on the mortgage. Following Pacific Union's denial of his appeal, Bomar initiated the present suit.

**Legal Standard**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In determining whether a genuine issue of material fact exists, this Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). However, "[m]erely alleging a factual dispute cannot defeat the summary judgment motion." *Samuels v. Wilder*, 871 F.2d 1346, 1349 (7th Cir. 1989). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**Discussion**

Bomar's complaint first alleges that Pacific Union violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et. seq.*. RESPA provides, in pertinent part, that loan servicers must take timely action to respond to borrowers requests. That provision is implemented through federal regulations which set forth specific guidelines governing appeals from the denial of loss mitigation applications. The relevant regulation provides, in pertinent part, that:

> Within 30 days of a borrower making an appeal, the servicer shall provide a notice to the borrower stating the servicer's determination of whether the servicer will offer the borrower a loss mitigation option based upon the appeal and, if applicable, how long the borrower has to accept or reject such an offer or a prior offer of a loss mitigation option. A servicer may require that a borrower accept or reject an offer of a loss mitigation option after an appeal no earlier than 14 days after the servicer provides the notice to a borrower. A servicer's determination under this paragraph is not subject to any further appeal.

12 C.F.R. § 1024.41(h)(4).

Bomar contends that Pacific Union violated this resolution when it failed to respond to his written appeal, which Pacific Union received on September 30, 2015. Here, however, it is undisputed that Bomar filed a CFPB complaint on September 15, 2015, and that Pacific Union treated that complaint as an appeal of its prior decision. By the time Bomar subsequently sent the September 30, 2015 letter, Pacific Union had already uploaded its response to Bomar's complaint to the CFPB web portal in accordance with CFPB requirements.[1] Pursuant to the regulations, that determination was not subject to further appeal. 12 C.F.R. § 1024.41(h)(4).

Bomar further argues that a genuine issue of material fact remains as to whether Bomar's appeal was subject to independent evaluation. 12 C.F.R. § 1024.41(h)(1)(3) provides that "[a]n

---

[1] Bomar offers, and this Court is aware of, no legal authority to suggest that responding in such a manner was impermissible under the applicable regulations. In his response, Bomar argues that there is "an issue of material fact as to whether the notice had to be sent in writing." Bomar is incorrect in this respect; the question of whether a federal regulation requires that a notice be provided in writing is a question of law, not a question of fact, and Bomar has failed to offer any authority to support his interpretation of that law. *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994).

appeal shall be reviewed by different personnel than those responsible for evaluating the borrower's complete loss mitigation application." Bomar argues that Pacific Union violated RESPA by having members of its loss mitigation team conduct the independent review of Bomar's appeal. This argument, however, is not contained in Bomar's complaint and therefore cannot be raised here. *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."). Even if this Court was to consider this newly raised argument, moreover, Bomar has offered no legal authority to support his conclusory assertion that section 1024.41(h)(1)(3) requires review by a different department (as opposed to different individuals) and no evidence to controvert Pacific Union's evidence establishing that an independent review occurred. Bomar has accordingly failed to establish a genuine dispute of material fact with respect to his RESPA claim.

Bomar's complaint also alleges that Pacific Union violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505. Specifically, Bomar alleges that Pacific Union violated ICFA by (1) failing to follow federal guidelines in evaluating his request for a loan modification, (2) not accepting his loan modification application without supporting documentation from Gena, and (3) denying a loan modification once Gena had executed a quitclaim deed. The operative provision of ICFA provides, in pertinent part, that:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2. In order to assess whether conduct is unfair under ICFA, courts consider whether (1) the conduct violates public policy; (2) the conduct is so oppressive that the consumer has little

5

choice but to submit; or (3) the conduct causes consumers substantial injury. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010) (*citing Robinson v. Toyota Motor Credit Corp.,* 775 N.E.2d 951, 961, 201 Ill.2d 403 (2002)). All three criteria do not need to be satisfied to support a finding of unfairness, a practice "may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 775 N.E.2d 961.

A practice offends public policy when it violates a standard of conduct established by statutes or the common law or otherwise falls "within the penumbra of some established concept of unfairness." *Ekl v. Knecht*, 585 N.E.2d 156, 163, 223 Ill.App.3d 234 (1991). Here, Bomar's complaint alleges that Pacific Union's conduct violated HUD and FHA-HAMP guidelines. Bomar, however, has failed to identify with specificity the guidelines he believes were violated beyond his general allegation that the guideline in question allows an occupying co-borrower to be considered for loss mitigation if a quitclaim deed evidencing the non-occupying co-borrow has relinquished all rights to the property has been recorded. Without specificity regarding the guidelines in question, Bomar cannot establish that Pacific Union's conduct violated a standard of conduct established by statute or common law. Bomar, moreover, fails to provide any legal argument establishing that the unidentified guidelines that he relies on constitute "a standard of conduct established by statutes or the common law" or otherwise fall within the scope of an established concept of unfairness.[2]

The undisputed facts also establish that Pacific Union's conduct was not oppressive. Conduct is considered oppressive under ICFA when it leaves the consumer with little alternative but to submit to it. *Galvan v. Northwestern Mem'l Hosp.*, 888 N.E.2d 529, 536, 382 Ill.App.3d 259 (2008). Here, Pacific Union denied Bomar's loan modification requests and refused to modify Bomar's loan

---

[2] Pacific Union, coming to Bomar's aid, infers that the guidelines that Bomar is describing are those contained in the Handbook for Servicers of Non-GSE Mortgages. This document, however, is not in the record, and the internet address that Pacific Union provides is no longer functional. In any event, the excerpts that Pacific Union provides suggest that the guideline in question is permissive in nature and therefore would not have been contrary to Pacific Union's actions here.

based on the quit-claim deed because the deed conflicted with Bomar's divorce decree. Although Bomar contends that Pacific Union lacked "standing" to take this action, he fails to offer any authority justifying the relevance of principles of standing to the decision-making of private companies. Pacific Union, moreover, repeatedly informed Bomar that he would be considered for a loan modification if he (1) provided his co-borrower's financial information to Pacific Union or (2) provided a divorce decree that vested title solely in his name. Moreover, it is undisputed that Pacific Union informed Bomar of mechanisms through which he could remove Gena from the loan, including assumption or refinancing. Finally, Bomar was not in default at the time of his loss mitigation applications and was not facing imminent foreclosure, which weighs against a finding of oppressive conduct. *Rodriguez v. Chase Home Finance, LLC,* No. 10 C 05876CH, 2011 WL 5076346, at *4 (N.D. Ill. Oct. 25, 2011) (Chang, J.). Based on these undisputed facts, it cannot be said that Bomar was left with little alternative but to submit to Pacific Union's conduct.

Finally, Bomar has failed to put forward any evidence demonstrating that he has suffered a substantial injury. In order to constitute a substantial injury, an injury must be (1) substantial, (2) not weighted by any countervailing benefits to consumers or competition that the practice produces, and (3) be an injury that the consumer could not reasonably have avoided. Siegel, 312 F.3d 935. Bomar alleges that he suffered credit damage, was denied the opportunity to negotiate a plan to keep his home, and was assessed excessive and unnecessary interest. Bomar has offered no evidence, however, establishing that his credit score was diminished or that he paid excessive or unnecessary interest. The undisputed evidence, moreover, demonstrates that the injuries that Bomar alleges could have been reasonably avoided. Pacific Union clearly explained to Bomar why his applications were denied and, at a minimum, informed him of reasonably available steps that would permit his application to be considered (such as obtaining an amended divorce decree or providing Gena's financial information).

Bomar has accordingly failed to demonstrate a genuine dispute of material fact with respect to Pacific Union's alleged ICFA violation.

**Conclusion**

For the foregoing reasons, Pacific Union's motion for summary judgment [52] is granted.

IT IS SO ORDERED.

Date:   April 25, 2017

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge